UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
CASE NO.  2:09-CV-529-FtM-29-DNF

BRETT FIELDS,
      Plaintiff

vs.

MICHAEL J. SCOTT, in his official capacity
as Sheriff of Lee County, Florida, and PRISON
HEALTH SERVICES, INC., a Tennessee
corporation; JOSEPH A. RICHARDS, JR., an
individual, and; BETTIE JOYCE ALLEN, an
individual.

## DEFENDANTS PRISON HEALTH SERVICES, INC., JOSEPH A. RICHARDS, JR. AND BETTIE JOYCE ALLEN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Defendants Prison Health Services, Inc. ("PHS"), Joseph Richards, Jr. ("Richards") and

Bettie Joyce Allen ("Allen") (collectively "Medical Defendants"), pursuant to Federal Rule of Civil

Procedure 56 and Local Rule 3.01, file this Motion for Summary Judgment as follows:

## MOTION

1.      Brett Fields ("Fields") filed suit in this District, claiming the Medical Defendants

violated his civil rights in providing medical care while he was detained in the Lee County jail.[1]

2.      The record evidence does not support Fields' claims.

3.      Therefore, the Medical Defendants are entitled to summary judgment in their favor.

---

1  The Sheriff has been dismissed from this case.

## MEMORANDUM OF LAW

### I.    Background

#### A.    Complaint

According to the Complaint, Fields was in the Lee County Jail from July 6 to August 9, 2007 (Complaint ¶ 1).  On July 10, 2007, he was diagnosed with a furuncle on his left arm, two weeks later, he complained that medications provided him were not working, and this complaint was ignored (Complaint ¶¶2-3).  On August 6, 2007, Fields claims he sought medical care for back pain, and numbness and weakness in his legs, but his requests were ignored (Complaint ¶ 4).  Two days later, he was seen by a nurse on these complaints, and he was referred to the physician assistant (Complaint ¶5).  Defendant Richards, the physician assistant, examined Fields the same day, ordered Tylenol and a follow-up appointment in one week, and returned Fields to his cell (Complaint ¶ 7).

Fields claims that in the early morning hours of August 9, 2007, he lost the use of his anal sphincter while using the toilet, and cellmates summoned help.  Defendant Allen responded, and "pushed Fields' rectum back into his body (Complaint ¶ 9).  She then used a sheet to remove him from the cell, "noted" that Fields was exhibiting signs of paralysis and she would have the physician see him in the morning (Complaint ¶¶ 9-11).

Fields was transferred to the hospital "sometime afternoon" [sic], where he was found to be paralyzed in the lower extremities, and surgery was performed on a spinal abscess (Complaint ¶ 12-13).  He claims to still suffer partial paralysis (Complaint ¶14).

Bunnell & Woulfe P.A.  •  The Old Robb & Stucky Building, Suite 203  •  1625 Hendry Street  •  Fort Myers, Florida 33901

### B.    Medical Records[2]

The medical records from the jail are summarized:

**7/6/07**
**Nurses' Notes - unsigned**
Intake receiving and screening:  Complaint of being hit with brick back of head prior to arrest. Denies any communicable diseases, no mobility restrictions, complaint of blurred vision right eye since hit.  No recent hospitalizations or major surgical history.  Denies substance abuse, remaining health assessment negative.  Patient covered with tattoos.

**7/10/07**
**Inmate Medical Request Form - Heather Pereira, LPN**
IMRF:  Problem:  "Spider bite"
Response on 7/10/07:  States has had since incarceration and took Keflex on the outside.
O:  Open with purulent discharge, reddened and swollen on left forearm.
A:  Alteration in comfort - furuncle protocol started.

**7/10/07**
**Progress Note - Heather Pereira, LPN**
Inmate came to nurse complaint of needing bandage.  Inmate was asked to remove old bandage and a red and swollen area with defined center was observed.  Informed inmate to fill out request now and will be treated with protocol for communicable and infection (illegible).  Inmate adamant and irritated about not being treated sooner and didn't want to be moved to medical isolation.  Inmate filled out request with incorrect CPD number and birth date, was given bandage for area.  Movement sheet faxed and protocol started.

**7/10/07**
**Furuncle Protocol - Heather Pereira, LPN**
Site of Lesion:  left forearm
Description:  Open discharge, swelling, reddened.
Furuncle protocol:  First choice Bactrim DS 1 oral twice daily x10 days.

**7/14/07**
**Progress Note - Heather Pereira, LPN**
Inmate complaint "more [illegible]" on afflicted arm and that antibiotics not working.  Inmate has taken three of the ten days of Bactrim.  Inmate informed to fill out med request and give in a.m., continue taking medication and not lean affected area on cell bars.

---

2   The medical records from the jail are identified in and attached to the Affidavit of Shawn Irving, which is attached as Exhibit "A."

**7/18/07**

**Nurses' Notes - Tina Schelling, RN**

Admission Data:  Notify Amanda Duhamel (girlfriend).  Past Hospitalizations:  right knee surgery.  Past History:  negative.

Exam:  Temp - 99, Skin color/condition/turgor and recent injuries - negative, within normal limits.  Extremities, pulses, edema, joints - negative, within normal limits.  Spine within normal limits.  Genital/urinary system deferred.

Comments:  7/18/07 inmate at court at this time of H&P, signed M. Rigley, RN.  Note also signed by Tina Schelling, RN.

**7/24/07**

**Inmate Medical Request Form - M. Petit-Homme**

Problem—My problem is that the meds that were given to me are not helping the open wound is not healed.  I have been here for the 10 day and I'm not healed yet.  I've shown the nurse and he told me to fill out this form and give to the nurse in the morning to start the meds over.

Response on 7/26/07:

S:  to be cleared form 1 north

O:  No drainage or puss observed on left elbow.

Plan:  May be cleared for 1 north.

**8/8/07-08:55 a.m.**

**Progress Note - M. Rigby, RN**

Inmate reports increased back pain and numbness since "stretching" last Saturday.  "Now I can't even walk."  Now having muscle spasms in the lower back and lower bilateral extremities.

Objective:  alert and oriented X3; no acute distress; 97.2, 97% on room air.  Moves all extremities.  Upper extremity CMS intact.  Good pulses in bilateral lower extremities.  Resists moving bilateral extremities.

Plan:  J. Richards, P.A. to evaluate.

**8/8/07**

**Progress Note - J. Richards, PA**

Inmate presents in clinic with pain in lower extremities.  Inmate states 2 days prior he was stretching his back and felt intense pain 10/10 in back.  Inmate denies submitting medical request.  Inmate states since initial injury pain has migrated to lower extremity and pain is now unbearable.  Inmate denies strenuous exercise or alterations in urine color.  Inmate now states he cannot walk and needs a wheelchair.  Inmate also denies trauma to back and lower extremities.

Musculoskeletal:  Inmate complains of moderate pain with palpation.  When leg is lifted passively, inmate denies pain, but when rested states is hurts.  No edema, no erythema.

Plan:  Myalgia.  1.  Tylenol 325 oral twice daily x3 days.  2.  Follow up sick call in one week.

Bunnell & Woulfe P.A.  •  The Old Robb & Stucky Building, Suite 203  •  1625 Hendry Street  •  Fort Myers, Florida 33901

**8/8/07**
**Orders - J. Richards, PA**
1. Tylenol 325mg tabs twice daily x3 days.
2. Follow up in sick call one week (muscular pain).
3. Transfer to medical floor (downtown).

**8/8/07—9:35 a.m.**
**Medical//Mental Health Housing Recommendations- S. Coning, RN**
Housing Recommendation:  Inmate should be housed on the medical floor low bunk.
<u>Comments</u>:  sitting in IP right now.

**8/9/07 – 0130 a.m.**
**Progress Note - Bettie Allen, RN**
Incidental Note:  Responded to male dorm call at 2F15.  10-15 laying on floor supine stating his guts are coming out of his rectum and both his legs and feet are numb.  When we were able to get into cell I checked his rectum, there were visible external hemorrhoids which I replaced without problem. He showed no signs of pain when I pressed his abdomen and bladder area.  Abdomen was soft, not distended, unable to feel bladder, no retention of urine noted.  Pressure was applied to both legs, feet and hips with no visible signs of pain, no flinching or grimace of face noted.  He was moved on sheet to 2F28 for observation until seen by doctor in the morning.  He was yelling in pain while being moved but was complaint of being numb from his hips down.  I applied pressure up and down the spine with no flinching or complaint of pain except at end of coccyx.  He did voice pain at this area. He does not appear to be in any distress at this time.  Will have doctor check in a.m.

**8/9/07 - 1030**
**Progress Note – Dr. Dominguez**
S:  Patient reports "I was hit in the back of my neck with a brick by my stepbrother over a month ago and had no problems until a few days ago when I cracked my back then I began to notice intermittent back spasms and pain bilaterally.  A couple of days ago my legs began to get numb and since yesterday I cannot feel or move my legs from my hips down.  Last night my hemorrhoids fell out and the nurse pushed them back in.  My rectal area hurts a lot.  I never ever practiced anal sex or had any hemorrhoid problems in the past, in fact, I was very healthy until this problem began."
O:  White male in minimal distress sitting on wheelchair.  Both lower extremities <u>paraplegic areflexic not sensitive</u> to pain from proximal one third of both thighs downward.  Rectal:  some thrombosis of external hemorrhoids with severe pain and very decreased rectal sphincter tone.
A:  Sudden onset paraplegia with loss of reflexes and loss of sensitivity and decreased rectal sphincter tone consistent with severe neurologic disorder affecting spinal nerves.  No history of severe spinal trauma except for being hit with a brick.  Rule out Guillain-Barre - fracture - dislocation of spine (flaccid, areflexic paraplegia with sensory loss.  Consider affection of both anterior and posterior roots).  Spontaneous hematomyelia from vascular malformation, thrombosis of spinal artery, myelomalacia, spinal cord tumor, ruptured disc, Erb's Spastic Paralysis, syringomyelia, etc.
P:  Prompt transfer to ER for diagnosis and treatment.  Lay flat with spinal precautions.

Bunnell & Woulfe P.A.  •  The Old Robb & Stucky Building, Suite 203  •  1625 Hendry Street  •  Fort Myers, Florida 33901

**8/9/07**
**Emergency Department Referral**
Transfer - Assessment:  Loss of patellar and pedal reflexes.  Loss of sphincter tone.  Possible neurogenic bladder.  Case discussed with Joy at hospital SWR.  Pulse 90, RR- 16, BP - 140/83, T - 96.7, Pulse Occimetry 98% on room air.

**8/9/07**
**Order – Dr. Dominguez**
1. Lay flat with spinal precautions.
2. Stat transfer to ER.
3. Send fax copy of note to ER.

## C.    Richards' Deposition[3]

At the time he examined Fields, Richards was a physician assistant in the employ of PHS (B-4).  In this capacity, he worked under the supervision of Dr. Dominguez, but he could perform all tasks of a physician, except prescribe certain narcotic medications, and he has unfettered discretion to send a patient to the hospital if he deemed it necessary (B-17-20).

Richards described his examination of Fields on August 8, 2007.  Fields told him that he was experiencing back pain for two days, but did not submit an inmate medical request on this issue.  Instead, a nurse brought Fields to his attention (B-22-23).  Although he would have read the previous nursing note suggesting Fields' was complaining of numbness and pain, he would not rely on this information, as he would take his own history directly from the patient (B-32-33).  When he took this history, Fields complained only of back pain, not numbness (B-7-8, 28-33, 44, 48-50).

He performed an examination, palpating Fields' legs and back, noting moderate pain was present when the area was firmly grasped.  He also found that Fields had no pain when his legs were passively moved.  From this examination, he diagnosed Fields with muscle strain (B-33-34, 48-49), and the reason for Fields' reported inability to walk was secondary to pain; not paralysis (B-28-33, 44, 48-50).  He ordered that Fields be moved to a medical floor, where round-the-clock nursing was

Page 6

available and he could access care if he did not improve (B-15-15, 35). His plan was to follow-up in one week (B-35-36). He did not consider Fields' condition serious at the time of the examination (B-46-47).

**D.    Allen's Deposition**[4]

Allen has been a nurse for 26 years, and retired from PHS in 2007 (C-5). At the time Fields was in the jail, she was the night nurse supervisor in the jail (C-5-6). She also discussed her interaction with Fields.

In the early morning of August 9, 2007, Allen responded to the calls from other inmates in Fields' unit. There, she found Fields lying on his mat on his side, and other inmates told her that his "insides fell out" while he was using the toilet (C-9, 18). Because security rules prohibited her from entering the cell while other inmates were present, she asked Fields to scoot over to the door so she could examine him (C-17-18). Fields refused, stating that he needed to go to the hospital (C-26-27). She also asked the other inmates to move Fields to the door, but Fields refused (C-21, 23). Her only recourse was to have the corrections officers handcuff all the inmates in the unit and move them out of the area (C-19-22, 64-66).

Once all other inmates were out of the unit, Allen was able to make an assessment of Fields' condition. Fields told what happened and that his feet and legs felt numb (C-18, 44). Given his complaints and the report of what happened on the toilet, she was surprised, and a bit skeptical, when she found him with his jumpsuit on and completely buttoned. Her suspicions were heightened when Fields actively resisted her removing the jumpsuit for an examination, and she feared Fields might

---

3  Richards' deposition transcript is attached as Exhibit "B."
4  Allens' deposition transcript is attached as Exhibit "C."

Bunnell & Woulfe P.A. • The Old Robb & Stucky Building, Suite 203 • 1625 Hendry Street • Fort Myers, Florida 33901

have been sexually assaulted in the unit (C-30-32, 42-43).  That he was fully dressed led Allen to question the account of what happened and Fields' claim of numbness (C-42-43).

Nevertheless, Allen was able to peel the jumpsuit back enough to examine Fields' rectum. There, she found what she described as obvious hemorrhoids.  She walked the short distance to the nurse's station to get some lubricant, and was able to easily replace the hemorrhoids, and Fields' sphincter held them in place (C-26-28, 32-34, 35, 43-44).  With the help of another nurse, Allen made a physical assessment, including the taking of vital signs.  She palpated up and down his spine to his tailbone, and along his hips and legs, finding no pain except in the tailbone (C-26-27, 40, 67). Allen also lifted Fields' legs and let them fall to see if he lost control of his legs.  When the legs did not fall quickly to the floor, she concluded that he was not paralyzed (C-69, 72).

Allen discussed her authority to send an inmate to the hospital, explaining that in a true emergency, one involving life and death, she could send the inmate to the emergency room.  If she thought the inmate should go to the hospital in the absence of a life-or-death situation, she was required to first call the on-call physician or physician assistant, which she did often (C-60-62). Given her assessment and Fields' vital signs, she decided that he did not need to go to the hospital, but could see Dr. Dominguez in the morning, and she put him on the sick call list (C-63).  Instead, she had Fields transferred to an observation cell at the nurse's station, where the nurses could see him and he could call out if he needed further assistance (C-15, 27, 36-37, 44, 46).  Throughout the rest of the night, she heard nothing more from Fields, and did not think he needed any more care than that provided (C-37, 74).

Page 8

II.   **Argument**

A.   **PHS' Liability**

When bringing a federal civil rights claim against a corporation such as PHS, liability only attaches if an official unconstitutional policy or custom of the entity or corporation causes the alleged deprivation of constitutional rights.  *See Monell v.Department of Social Serv.,* 436 U.S. 658*,* 691 (1978);  *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir.2001) (en banc ) (stating that a county is "liable under section 1983 only for acts for which the county is actually responsible"); *Buckner v. Toro*, 116 F.3d 450 (11th Cir.1997) (extending the application of *Monell* to private corporations performing traditional public functions).  "A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . .  A custom is a practice that is so settled and permanent that it takes on the force of law."  *Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489 (11th Cir. 1997). "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice.  Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the [corporation]."  *Depew v. City of St. Mary's,* 787 F.2d 1496, 1499 (11th Cir. 1986).

The claim here is that PHS had a policy of denying medical treatment to prisoners, or PHS employees provided inadequate medical care in treating Fields for the infection and numbness. Taking the last first, PHS is entitled to summary judgment in its favor, as it cannot be held liable on a vicarious theory.  *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403, (1997) (rejecting vicarious liability in section 1983 cases).

Page 9

Furthermore, PHS did not have a policy of denying medical care to inmates, and Fields' medical conditions were not ignored.  A few days after entering the jail, Fields complained that he was bitten by a spider prior to his arrest.  He was promptly seen, and the furuncle protocol was started, including the provision of antibiotics.  A few days later, he complained the antibiotics were not working, and he was seen again with instructions to take the full ten-day supply of medication. A history and physical was performed on July 18, 2007, with no unusual findings.

Fields again sought medical care on July 24, 2007, and an examination found the lesion on his arm without puss or drainage.  Nothing was heard from Fields until August 8, 2007, when he complained that he injured his back while stretching, and complained that he could not walk.  The nurse that examined him found that he was having spasms in his back and legs, he was in no acute distress, and he could move all extremities.  Nevertheless, she referred Fields to Richards, the physician assistant, who examined him the same day.

Richards took a history from Fields, and was told he had back pain and could not walk. Fields did not complain of numbness.  Richards conducted his own examination and concluded that based on the complaints, presentation and examination, Fields was suffering from muscle strain.  He provided him with pain medication, ordered that he be transferred to a medical floor in another building where he could have better access to nursing care, and scheduled a follow-up appointment in one week.  During this encounter, Richards never considered Fields' condition to be more serious than his diagnosis.

Allen saw Fields the following morning, on complaints that his "insides fell out" while he was using the toilet.  After dealing with security rules, she was able to talk to Fields.  She heard his complaint and attempted to do a physical assessment.  Finding Fields fully clothed and resisting

Bunnell & Woulfe P.A.  •  The Old Robb & Stucky Building, Suite 203  •  1625 Hendry Street  •  Fort Myers, Florida 33901

removal of his jumpsuit for an examination, her suspicions were aroused, and she thought he may have been raped by other inmates.  She also questioned the legitimacy of the complaint, as Fields was somehow able to redress himself.

In spite of her concerns, she performed a physical examination, finding external hemorrhoids.  She was able to replace the hemorrhoids, and the sphincter held, indicating that Fields had no spinal problems causing his lower extremity complaints.  She also palpated his spine, hips and legs without a report of pain except in the tailbone, which she expected because of the hemorrhoids.  His vital signs were normal, and she performed an examination of his legs to rule out paralysis.

Although she found nothing more than the hemorrhoids, Allen took the extra precaution of having Fields moved to the nurse's station, where he could be easily seen and could access the nurses throughout the remainder of the night.  The plan was to have Fields seen by Dr. Dominguez in the morning, and Fields had no further complaints.

Dr. Dominguez saw Fields that following morning, found him without feeling in both legs from the mid-thigh downward, and ordered that he be taken to the emergency room.  In the meantime, he also ordered that spinal precautions be observed.  The transfer to the hospital was coordinated with Sheriff's Office employees.

Both Richards and Allen described PHS' policy regarding the authority to send a patient to the hospital.[5]  In true emergencies, anyone in the jail could call EMS, then notify the physician or one of the physician assistants later.  If the inmate's condition was not an emergency, but one of the nurses thought the inmate should go to the hospital, the rule was to first call the physician or one of the physician assistants, describe the inmate's condition, and have that medical provider decide

---

5   The policy is also in written form, and is identified in and attached to the Affidavit of Shawn Irving, which is attached as Exhibit "D."

Bunnell & Woulfe P.A.  •  The Old Robb & Stucky Building, Suite 203  •  1625 Hendry Street  •  Fort Myers, Florida 33901

whether hospitalization was warranted.  Upon separate examinations, neither Richards nor Allen saw

a need to send Fields to the hospital.

Given PHS' policy and the actual treatment Fields received over the course of his

incarceration, the claim against PHS cannot continue.  Each time Fields complained, he was

assessed, provided medications or referred to an upper-level practitioner.  To continue this claim,

Fields must show that PHS had a policy of denying health care to inmates, and the policy caused him

to be denied care.  But the care provided him belies this claim, as it is impossible to show care was

denied where care was provided.

The same is true concerning a policy of not sending inmates to the hospital for additional

care.  The testimony from both Richards and Allen, and the written policy show PHS had a system in

place to send inmates to the hospital when warranted.

### B.      Richards' and Allen's Liability

Richards and Allen are sued on constitutional theories through section 1983, which provides

in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State. . ., subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws, shall be liable
> to the party injured in any action at law, suit in equity, or other proper proceeding for
> redress.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights

elsewhere conferred by those parts of the United States Constitution and federal statutes that it

describes."  *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979).  As such, it is a mechanism for

bringing claims for federal constitutional or statutory violations.

Page 12

To prove this constitutional claim, Fields must present evidence of an objectively serious medical need, and subjective evidence that Richards and Allen intentionally disregarded that need. *See Farmer v. Brennan,* 511 U.S. 825, 833-38 (1994); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1191 n.28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law). A serious medical need is one that has been diagnosed by a physician as needing treatment or one for which even a layperson would recognize the need for a doctor's care. *See Burnette v. Taylor, 533* F.3d 1325, 1330 (11th Cir.2008).

While due process prohibits jail officials from exhibiting deliberate indifference to prisoners' serious medical needs, the Supreme Court has stated that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle* at 106; *see Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).

In *Estelle,* the court reinstated the district court's dismissal of a prisoner's section 1983 complaint for failure to state a claim. Recognizing that the plaintiff s primary claim was that "more should have been done" to diagnose and treat a back injury, the Court explained, "[a] medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.* at 107. "There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not . . . .'" *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer,* 511 U.S. at 838); *see Haley v. Gross*, 86 F.3d 630, 641 (7th Cir.1996) (holding that negligence on the part of an official does not violate the

Page 13

Constitution, and it is not enough that he or she should have known of a risk"); *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir.2002).  Even repeated instances of negligence are insufficient to prove deliberate indifference.  *See Sellers v. Henman*, 41 F.3d 1100, 1102-03 (7th Cir.1994) (stating that "[i]t would be a great mistake . . . to infer . . . that a series of purely negligent acts can be equated to an act of deliberate indifference").

Furthermore, where, as here, a plaintiff is provided medical care, courts are extremely hesitant to find a constitutional violation because it is assumed the medical professional provided care based on his or her medical judgment.  *See Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir.), cert. denied, 475 U.S. 1096 (1986);  *Payne v. Corrections Corp. of America*, 194 F.3d 1313 (6th Cir. 1999);  *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977) (stating that courts will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment");  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir.1976) (stating that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").

The claims against Richards and Allen require a showing that they knew Fields had a serious medical need, yet failed to address that need.  According to the record, the claims fail both tests. Richards examined Fields, diagnosed him with muscle strain, provided him medications, and moved him to a medical area in the jail.  Allen examined Fields, found external hemorrhoids, treated him, and did not find any neurological problem.  Significantly, neither considered Fields to have a more significant problem than shown by their individual assessments, and neither considered him to be in need of immediate additional medical care.  From their assessments, Fields did not have a serious

Bunnell & Woulfe P.A.  •  The Old Robb & Stucky Building, Suite 203  •  1625 Hendry Street  •  Fort Myers, Florida 33901

medical need of which they had subjective awareness, and they did not ignore the medical needs of which they were aware.

On this record, the most that could be said is that Richards and Allen may have been negligent in the care provided. But the Supreme Court precluded negligence as a basis for these claims decades ago, and the statute of limitations on a negligence claim expired two days before this case was filed. Since a constitutional claim is not present, Richards and Allen are entitled to summary judgment in their favor.

### III.   <u>Conclusion</u>

For the foregoing reasons, summary judgment should be entered in favor of the Defendants.

Bunnell & Woulfe P.A.  •  The Old Robb & Stucky Building, Suite 203  •  1625 Hendry Street  •  Fort Myers, Florida 33901

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of November, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, which will send the foregoing to the following:  Dion Cassata, Esq., Cassata & Hanson, P.L. 320 SE 10th Court, Fort Lauderdale, FL  33316 and Greg Lauer, Esq., 320 SE 10th Court, Fort Lauderdale, FL  33316.

By:   s/ Gregg A. Toomey
    Gregg A. Toomey
    Florida Bar No.: 0159689
    BUNNELL & WOULFE, P.A.
    Attorneys for PHS, Richards and Allen
    1625 Hendry Street, Suite 203
    Fort Myers, FL  33901
    Telephone:    (239) 337-1630
    Facsimile:    (239) 337-0307
    Email:  gat@bunnellwoulfe.com