RECEIVED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA 2011 FEB 14 AM 8:41
FORT MYERS DIVISION

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

BRETT FIELDS,

              Plaintiff,

vs.                                 Case No.  2:09-cv-529-FtM-29DNF

PRISON  HEALTH  SERVICES,  INC.,  a
Tennessee  corporation,  JOSEPH  A.
RICHARDS,  JR.,  an  individual  and
BETTIE JOYCE ALLEN, an individual,

              Defendants.[1]

_____

### OPINION AND ORDER

     This matter comes before the Court upon review of Defendants
Prison Health Services, Inc., Joseph A. Richards, Jr. and Bettie
Joyce Allen's Motion for Summary Judgment (Doc. #73, Motion) filed
November 3, 2010.  Defendants submitted exhibits in support of the
Motion (Doc. #73-1, Exhs. A-D) consisting of: copies of Plaintiff's
records maintained by the Lee County Jail (Def. Exh. A); deposition
transcript of Joseph Richards (Def. Exh. B); deposition transcript
of Bettie Joyce Allen Earl (Def. Exh. C); and, a copy of PHS's
Policy No. J-E-08 "Emergency Services; (Def. Exh. D).  Plaintiff,
Brett Fields, filed a Response in Opposition to Defendants' Motion
(Doc. #79, Response) on December 2, 2010.   Plaintiff submits

_____

     [1]Mike Scott, Sheriff of Lee County, was named as a Defendant in
his official capacity in Count I of the Complaint.  Complaint at 7.
On October 4, 2010, the Complaint was dismissed with prejudice
against Sheriff Scott pursuant to the parties' Joint Stipulation of
Dismissal.  See Docs. #65, 68.

exhibits in support of his Response (Doc. #79-1, Pl's Exhs. 1-6), which include: copies of PHS's medical records (Pl. Exh. 1); deposition transcript of Heather Pereira (Pl. Exh. 2); deposition transcript of Jaime A. Alvarez, M.D. (Pl. Exh. 3); deposition transcript of Noel Dominguez, M.D. (Pl. Exh. 4); Prehospital Patient Care Report dated August 9, 2007 (Pl. Exh. 5); and Operative Report from Southwest Florida Regional Medical Center (Pl. Exh. 6). After being granted leave, Defendants filed a Reply Memorandum (Doc. #84, Reply). Defendants attach a copy of the PHS' contract with Lee County Sheriff's Office to the Reply (Doc. #84-1, Def. Reply Exh. A). This matter is ripe for review.

I.

Plaintiff Brett Fields, who is represented by counsel, is proceeding on his Second Amended Complaint filed pursuant to 42 U.S.C. § 1983 (Doc. #57, Complaint). The Complaint alleges an Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical condition while Plaintiff was confined in the Lee County · Jail.[2] See generally Complaint. In particular, the Complaint alleges, in Count I, a custom, policy or practice against Prison Health Services, Inc. (PHS); in Count II, a claim for deliberate indifference to Plaintiff's serious medical conditions against Defendant Joseph A. Richards, Jr. (Richards); in Count III,

_____

[2]Fields was in pretrial status from July 6, 2007 but was sentenced on July 18, 2007 and was to be released on or about August 18, 2007. Response at 8, n.8.

-2-

a claim for deliberate indifference to Plaintiff's serious medical
condition against Defendant Nettie Joyce Allen (Allen).

According to the record, Fields is a Florida resident who was
booked into the Lee County Jail system on July 6, 2007, on two
misdemeanor charges as a healthy 24-year old man.  Defendant PHS,
pursuant to a contract with the Lee County Sheriff, provided medical
and health care to inmates confined in the Lee County Jail.  Fields
initially sought medical attention on July 10, 2007, from PHS
medical personnel for a wound on his arm.  PHS personnel diagnosed
Plaintiff with a "communicable infection (furuncle)", (Def. Exh. A
at 17), caused by the bacteria Staphylocci aureus.  Subsequently,
Fields verbally and in writing continued to seek medical attention
as the furuncle did not heal and his physical symptoms worsened.

Eventually, on Wednesday, August 8, 2007, at 8:55 a.m.,
Plaintiff presented himself to the medical department at the jail
complaining of increased back pain and numbness, and stated "Now I
can't even walk." Id. at 16. The nurse on duty referred Plaintiff
to Defendant Richards, a physician assistant.  Id.  Richards
generally did not see any patients on Wednesdays, unless it was a
"medical emergency." Richards Depo (Def. Exh. B) at 26. When
Richards saw Plaintiff, Plaintiff was confined in a wheelchair. Id.
Plaintiff advised Richards that he was experiencing pain in his back
and lower extremities. Id. at 8, 22. Plaintiff rated the pain a

-3-

10 out of 10 and stated it was "unbearable." Id. at 22. Plaintiff denied any strenuous exercise and claimed "he cannot walk and needs a wheelchair." Id. Richards did not undertake any neurological examination. Id. at 32. Dr. Dominguez, the physician from PHS assigned to the Lee County Jail, was "twenty seconds" away in the medical department, but was not consulted. Id. at 9. Richards assessed Plaintiff with "myalgia," prescribed Tylenol twice a day for three days, and scheduled Plaintiff for follow-up in one week. Richards also ordered Fields to be placed in a cell located on the medical floor. Richards Depo. at 35. Richards did not see or examine Plaintiff again. Id. Due to capacity issues, Plaintiff was placed on the floor on a mat with a sheet. Allen Depo. (Def. Exh. C) at 19-20. For the next 15 hours, Plaintiff was left unattended.

On August 9, 2007, at 1:30 a.m., Defendant Allen heard inmates yelling "man down." Allen Depo. at 16-17. Allen is a registered nurse and was the night supervisor for PHS at the Lee County Jail. Id. at 5. In her position. she is the "highest ranking medical official on-site during the night shift." Id. at 48. Allen was not aware of Plaintiff or that he had previously been having any problem before she go the "man down" call. Id. at 13-15. When Allen arrived, Plaintiff "was laying on the floor supine stating his guts came out of his rectum and both his legs and feet were numb." Id. at 17-18. Allen asked Plaintiff to scoot over to the bars but he

-4-

said he was unable. Id. at 19. There were "at least ten" other inmates in the cell and they were "yelling and hollering, 'you need to take him to the hospital. You're going to let him die right here.'" Id. at 22. Plaintiff kept asking to go to the hospital. Id. at 27, 30. Upon examination, Allen concluded that Plaintiff had hemorrhoids and "physically put them back." Id. at 28. Plaintiff was dragged on a sheet to an observation cell. Id. at 28-29. Plaintiff was "yelling pain while being moved." Id. at 41. Plaintiff kept complaining saying "I can't move. I can't move. I can't move." Id. at 30. When Allen examined Plaintiffs' rectum, she didn't think it looked "like a prolapse. It looked like hemorrhoids to [her]." Id. at 35. Plaintiff complained of pain at the end of his coccyx. Id. at 45. Allen placed Plaintiff on sick call to be seen by the physician the next morning. Id. at 37. Allen did not place any notation next to Plaintiff's name. Id. at 47.

Allen only can send an inmate to the hospital if it is a "life or death matter." Id. at 50. Otherwise she is required to call the doctor first for permission. Id. During monthly meetings with PHS officials and the doctor, complaints were made that nurses were unnecessarily sending inmates to the hospital. Id. at 51-57. PHS officials complained it cost money to send inmates to the hospital and only doctors are skilled to make that decision. Id. at 56-59. Allen did not call Dr. Dominguez about Plaintiff because "it was

only three hours until the doctor would have been there. [Plaintiff] would have waited in the ER three hours." Id. at 63.   Green "doubt[s] everything an inmates tells [her]." Id. at 69. Allen did not believe what Plaintiff was telling her. Id. at 72. Allen did not do a pin prick test to confirm Plaintiff's claim of paralysis, because she is not qualified to do the test. Id. at 73.   Allen believes "hospitals don't like inmates." Id. at 79. Allen believes it is better for an inmate complaining of loss of motor function or partial paralysis to stay in an observation cell then be taken to the hospital, "and they're not in danger." Id. at 78.

When Dr. Dominguez arrived at the jail at 8:00 a.m., Plaintiff was not seen immediately. Dominguez Depo (Pl. Exh. 4) at 29, 30, 32.[3] Plaintiff advised Dr. Dominguez that he could not feel his legs from his hips down, and that part of his rectum had fallen out the previous night. Id. at 20.   Dr. Dominguez assessed Plaintiff with "sudden onset of paraplegia with loss of reflexes and loss of sensibility with decreased rectal sphincter tone, consistent with severe neurologic disorder affecting the spinal nerve " and ordered Plaintiff transported to the hospital. Id. at 21-22. Dr. Dominguez considered Plaintiff to be in need of immediate emergency care. Id. at 27.   Lee County EMS were   contacted to transport Plaintiff at

[3]Plaintiff claims that 2 ½ hours passed before Plaintiff was brought to Dr. Dominguez for examination. Response at 6. Defendants state that Dr. Dominguez did not know what time he examined Plaintiff. Reply at 5, n.2

12:23 pm. Pl Exh. 5. Upon examination of Plaintiff, EMS staff found left and right leg paralysis. Id.

Upon transport to Southwest Florida Regional Medical Center, Plaintiff was examined and MRIs of the spine were taken. Pl. Exh. Alvarez Depo. (Pl. Exh. 3) at 13. Dr. Alvarez, a neurological surgeon was contacted, and he determined that "emergency surgery had to be performed" upon Plaintiff. Id. at 14. Upon examination, Plaintiff presented with "severe weakness in the lower extremities, [and] near complete paralysis," which Dr. Alvarez considered a serious medical condition. Id. at 16-17. In Dr. Alvarez's opinion, an otherwise healthy person who presents with paralysis from the waist down should have "immediately been referred to a specialist." Id. at 22. Dr. Alvarez stated that there is no medical justification for delaying an MRI or other testing if an person exhibits a sudden onset of paralysis. Id. at 21. Tests and surgery confirmed that Plaintiff has a spinal epidural abscess. Id. at 13. Surgical intervention performed at an earlier time would have resulted in a "better outcome in [Plaintiff's] motor function." Id. at 23-25, 27-28. Significantly, Dr. Alvarez confirmed, within a reasonable degree of medical certainty:

. . . in general when a spinal epidural abscess presents with weakness or paralysis longer than 24 hours, the chances of improvement is lower; and the longer the paralysis continues, it rapidly approaches zero. So if you decompress the spine within 24 hours of the onset of paralysis, there is a significant - - there is a good chance based on anecdotal experience and historical

-7-

> experience that the patient will recover a significant
> amount of neurological function.

Id. at 28.

## II.

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law." Swisher Int'l, Inc. v. Schafer, 550 F.3d 1046, 1050 (11th Cir. 2008); Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The standard for creating a genuine dispute of fact requires courts to "make all reasonable inferences in favor of the party opposing summary judgment, Chapman v. Al Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all possible inferences in the non-moving party's favor. "A factual dispute alone is not sufficient to defeat a properly pled motion for summary judgment." Teblum v. Eckerd Corp. of Fla., Inc., 2:03-cv-495-FTM-33DNF, 2006 WL 288932 *1 (M.D. Fla. Feb. 7, 2006). Instead, "[o]nly factual

-8-

disputes that are material under the substantive law governing the case will preclude entry of summary judgment." Lofton v. Sec'y Dep't of the Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004)(citing Anderson, 477 U.S. at 247-48). The moving party bears the burden of demonstrating to the Court that based upon the record no genuine issues of material fact exist that should be decided at trial.    Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d at 1260(citing Celotex, 477 U.S. at 323).    Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'" Pittman v. Tucker, 213 Fed. Appx. 867, 870 (11th Cir. 2007)(quoting Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002)).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial."    Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences", Anderson, 477 U.S. at 255, must be drawn in favor of the non-moving party, but those inferences are drawn "only to the extent

-9-

supportable by the record," <u>Penley v. Eslinger</u>, 605 F.3d 843, 848 (11th Cir. 2010)(citation omitted).

The court, however, "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, [the court's] inferences must accord deference to the views of prison authorities." <u>Beard</u>, 548 U.S. at 530. "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" <u>Cuesta v. Sch. Bd. of Miami-Dade County</u>, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. <u>Leigh v. Warner Bros., Inc.</u>, 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. <u>Miranda v. B & B Cash Grocery Store, Inc.</u>, 975 F.2d 1518, 1534 (11th Cir.1992) (citing <u>Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.</u>, 750 F.2d 838, 841 (11th Cir. 1985)).

-10-

### III.

To survive Defendants' motion for summary judgment on his claims of deliberate indifference, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that he had an objectively serious medical need, (2) that Defendants acted with deliberate indifference to that need, and (3) that his injury was caused by Defendants' wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). To show that Defendants Richards and Allen were deliberately indifferent to his medical needs under the second prong of the Goebert test, Plaintiff must offer some proof that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id. at 1326.    A complete denial of readily available treatment for a serious medical condition obviously constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). "Circumstantial evidence can be used to establish subjective awareness and deliberate indifference." Thomas v. Cook County Sheriff's Dept., 604 F. 3d 293, 302 (7th Cir. 2010)(recognizing that other inmates complained about medical condition of inmate and inmate was in plain view of officers lying on the floor unable to move and coughing up blood as evidence of deliberate indifference).

Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable.  See Id. at 393-94; Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir.1990). Plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed."  Hill v. Dekalb Reg'l Youth Pet. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), abrogated in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002)); see also Farrow v. West, 320 F.3d 1235, 1244 n. 12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730 (2002) . . . the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

The Eleventh Circuit has also held that deliberate indifference may be established by a showing of grossly inadequate care, as well as by a decision to take an easier but less efficacious course of treatment.  See Steele v. Shah, 87 F.3d 1266, 1269-70 (11th Cir. 1996); Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). Moreover, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount

-12-

to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985).

With these precedents in mind, the Court turns to Defendants' Motion. In essence Defendants argue that because Plaintiff was examined by Defendants Richards and Allen and neither of them considered Plaintiff's medical condition serious, Plaintiff cannot prevail on his Eighth Amendment claim, and instead, at most can prove only negligence. See generally Motion. Further, Defendants argue that Plaintiff cannot establish a custom, policy or procedure in order to attribute § 1983 liability to PHS. Id. The Court disagrees and concludes that Plaintiff has identified evidence in the record upon which a jury could find in his favor against each of the Defendants.

The Court finds irrefutable that at some time subsequent to July 10, 2007, and certainly by August 8, 2007, Plaintiff had a serious medical condition. Despite mounting evidence that plaintiff's medical condition was not improving, but indeed was deteriorating, neither individual defendant contact or consulted with Dr. Dominguez, the jail's physician, regarding Plaintiff's medical condition, nor was Plaintiff transported to the hospital for any testing. Dominguez Depo. at 35. Instead, Defendant Richards performed only a cursory examination of Plaintiff, and Defendant Allen decided to delay medical treatment until Dr. Dominguez arrived

to decide whether Plaintiff should be transferred to the hospital. Further, the Court finds that Plaintiff has presented verifiable medical evidence that the delay in transporting Plaintiff to the hospital had a detrimental effect. The facts summarized above leads the Court to find that Plaintiff has shown that material fact issues exist which would allow a reasonable jury to find deliberate indifference by Defendants Richards and Peters in violation of the Eighth Amendment.   Finally, the Court also finds Plaintiff has submitted evidence upon which a jury could conclude that PHS had a custom, policy or practice that prohibited and/or discouraged medical personnel, other than a physician, from transferring inmates to the hospital for emergency treatment.   Consequently, Defendants are not entitled to summary judgment.

ACCORDINGLY, it is hereby

**ORDERED:**

Defendants Prison Health Services, Inc., Joseph A. Richards, Jr. and Bettie Joyce Allen's Motion for Summary Judgment (Doc. #73) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, on this ___14th___day of February, 2011.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: hmk
Copies: All Parties of Record

-14-