UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRETT FIELDS,

               Plaintiff,

vs.                                  Case No.  2:09-cv-529-FtM-29DNF

PRISON HEALTH SERVICES, INC., a
Tennessee corporation, JOSEPH A.
RICHARDS, JR., an individual and
BETTIE JOYCE ALLEN, an
individual,

               Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court upon Defendant Prison Health Services, Inc.'s Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial (Doc. #125, "Motion"). Defendant seeks entry of judgment as matter of law pursuant to Fed. R. Civ. P. 50(b), or, in the alternative, a new trial under Fed. R. Civ. P. 59. Plaintiff, filed a Response to the Motion (Doc. #126, "Response"). After being granted leave of Court, Defendant filed a Reply to the Response (Doc. #132, "Reply").

### I. Background

Plaintiff Brett Fields ("Plaintiff" or "Fields") brought a civil rights action pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical condition while Plaintiff was confined in the Lee County Jail. See generally Second Amended Complaint (the Complaint) (Doc.

#57).   The Complaint alleged in Count I that Prison Health Services, Inc. (PHS), the medical provider for the jail, had a custom, policy or practice of deliberate indifference; in Count II, that the physician assistant employed by PHS, Joseph A. Richards, Jr. ("Richards"), was deliberately indifferent to Plaintiff's serious medical conditions; and in Count III, that a nurse employed by PHS, Joyce Allen ("Allen"), was deliberately indifferent to Plaintiff's serious medical condition.  A four-day jury trial was held in March 2011.  At the close of Plaintiff's case in chief, Defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).   Trial Transcript (TT) at 511-12.   The Court denied Defendants' Rule 50(a) motion.   Id.  Defendants did not renew their Rule 50(a) motion at the close of all evidence.   See generally id.

After jury instructions, the jury was directed to make findings on the special interrogatory/general verdict form.   Doc. #113.   The jury returned defense verdicts in favor of Defendants Richards and Allen, but found that PHS was deliberately indifferent to Plaintiff's serious medical needs and that Defendant PHS' acts were the proximate cause of Plaintiff's damages.   Doc. #113.   The jury determined that Plaintiff was entitled to $700,000 in compensatory damages and $500,000 in punitive damages.   Id.

PHS files the instant Motion seeking relief on the following grounds.   First, Defendant PHS renews its Rule 50(a) motion for a

-2-

judgment as a matter of law, arguing that Fields failed to present sufficient evidence at trial for a reasonable jury to have found that a "policy" or "custom" caused Fields' constitutional injury, as required for liability under § 1983 to attach against PHS as a corporate entity pursuant to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978) and its progeny.  Motion at 6.

Second, pursuant to Rule 59, PHS requests that either judgment be entered for PHS or a new trial ordered on the basis that: (a) the jury failed to follow the instruction regarding a policy or custom and causation; and, (b) the jury's verdict is "inconsistent" because PHS employees (Defendants Allen and Richards) were found not to have had awareness of Fields' serious medical need, as evidenced by the jury's answer to Interrogatory 2. <u>Id.</u> 14.  As a result, PHS argues it cannot be held liable because "[a]s a corporation, PHS derives its awareness from employees." <u>Id.</u> at 17.

Finally, Defendant contends that the punitive damages award should be set aside because "the jury was not sufficiently instructed on the legal basis for an award of punitive damages." <u>Id.</u> at 18.  In particular, Defendant claims that the Eleventh Circuit pattern instruction should have been modified, as requested by PHS, to include a definition for the word "malice" as used in the instruction. <u>Id.</u> at 19.

The Court has considered the parties' respective pleadings and reviewed the record evidence.  Based upon applicable law and the record, the Court denies PHS' Motion in its entirety.

## II. Applicable Standards

A Rule 50 judgment as a matter of law is appropriate when there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party.  Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1251 (11th Cir. 2007).  "[I]n deciding on a Rule 50 motion a district court's proper analysis is squarely and narrowly focused on the sufficiency of evidence."  Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007).  As such, "[t]he jury's findings should be excluded from the decision-making calculus on a Rule 50(b) motion, other than to ask whether there was sufficient evidence, as a legal matter, from which a reasonable jury could find for the party who prevailed at trial."  Id. at 1228.  The Court looks at the record evidence drawing all inferences in favor of the nonmoving party, here the plaintiff.  Nurse "Be" v. Columbia Palms W. Hosp. L.P., 490 F.3d 1302, 1308 (11th Cir. 2007).  A jury verdict "must be left intact if there is evidence from which the decision maker . . . reasonably could have resolved the matter the way it did."  Rodriquez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1264 (11th Cir. 2008).  Even if the evidence would have supported a verdict for the losing party, "[t]he issue is not whether the evidence was

sufficient for [the losing party] to have won, but whether the evidence was sufficient for it to have lost." Id. at 1264-65.

A Rule 59 motion for a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in courts of the United States; . . ." Fed. R. Civ. P. 59(a). Such reasons include a verdict which is against the weight of the evidence, a jury's award of damages which are excessive, and substantial errors in the admission or rejection of evidence or the instructions to the jury. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). Jury instructions must fairly and adequately address the issues and correctly state the law, and a motion for new trial may be granted in the trial court's sound discretion on the ground that erroneous and prejudicial jury instructions were given. Christopher v. Cutter Labs., 53 F.3d 1184, 1190-91 (11th Cir. 1995). While "[a] federal court has no general authority to reduce the amount of a jury's verdict," Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320, 1328 (11th Cir. 1999), it has discretionary authority to grant a new trial if the verdict is so excessive as to shock the conscience of the court, Carter v. DecisionOne Corp., 122 F.3d 997, 1006 (11th Cir. 1997). With plaintiff's consent, a district court may direct a remittitur of the amount awarded by the jury. Johansen, 170 F.3d at 1328-29. In reviewing the weight of the evidence, the Court cannot substitute its own credibility choices and inferences for the

reasonable choices and inferences made by the jury.  <u>Walls</u>, 1 F.3d at 1201; <u>Redd v. City of Phenix City, Ala.</u>, 934 F.2d 1211, 1215 (11th Cir. 1991).

### III.  Findings

### A.  Rule 50(b) Motion

At the close of Plaintiff's case, the following exchange took place at sidebar:

MR. TOOMEY: I have a motion.

THE COURT: All right.

MR. TOOMEY: Would you like to hear it now?

THE COURT: I would.

MR. TOOMEY: All right.  Judge, this is just a civil rights case, 8th and 14th Amendment.  In order to prove the case, they need to prove, against the individuals, that they knew of, and disregarded, a serious medical risk.  The problem with the plaintiff's case when it comes to the individuals is there's been no showing that they knew that Mr. Fields had a significant risk. Instead, the individuals testified, Mr. Richards, that he thought that he just had back pain and a back strain. Miss Allen thought that the problem was just hemorrhoids. I think it's significant that neither one of these people had any inkling that there was an additional problem. Now, I know that Dr. Emery says different.  What Dr. Emery thinks isn't important.  Dr. Emery is a neurologist; not a physician's assistant, not a nurse. Besides that, it's -- the standard really isn't medical in nature.  The standard is whether a layperson would understand that there was a need for additional care, not whether a physician's assistant or a nurse would know. As far as PHS goes, there's been absolutely no showing that the policy or procedure at issue here -- that is, the rule regarding sending out to the hospital -- had any causative effect, because neither one of them -- and they both testified to this -- neither one of them thought he needed to go out, and that rule didn't affect it.  As far as any -- and we've discussed this before -- anything

-6-

that occurred between August 8th -- or before August 8th
is no longer actionable, so I think that's pretty clear
now, if it wasn't before.  Additionally, any claim that
could be brought --and I don't think anyone is going to
argue with me on this one -- any claim that there was
wrongdoing by other people working for PHS, people that
the plaintiff testified he was trying to get help from
but aren't named in this case, is clearly gone.  I don't
think there's a claim for the MRSA infection, at all.  So
I think that's where we're at, Your Honor.  I don't think
there's been a showing against the individuals, or PHS,
that's sufficient to get us there.

THE COURT: All right.  The Court has to view the evidence
in the light most favorable to the plaintiff at this
stage of the proceedings.  Doing that, the Court is
satisfied that a reasonable jury could find for the
plaintiff as to each of the three defendants.  It may be
circumstantial as to some, but this case, in my view, is
just what we have a jury for.  So that motion will be
denied.

MR. TOOMEY: Thank you, Your Honor.

TT at 511-12.  Consequently, Defendant PHS properly preserved their

right to assert a post trial motion under Rule 50(b).[1]

Nonetheless, PHS is limited in the instant Motion to the grounds

it raised in its Rule 50(a) motion.  Warfield v. Stewart, No. 10-

11495, 2011 WL 2650872 (11th Cir. July 7, 2011)(citing Arce v.

Garcia, 434 F.3d 1254, 1259 n.15 (11th Cir. 2006)).

In the instant Motion, PHS asserts that Plaintiff failed to

establish a § 1983 claim against PHS because the evidence presented

---

[1]Plaintiff argues that PHS is procedurally precluded from
raising a Rule 50(b) motion because PHS failed to renew their Rule
50(a) motion at the close of all evidence.  Response at 2.  The
2006 Amendments to Rule 50 eliminate the language requiring a party
to renew their motion for judgment as a matter of law at the close
of evidence as a prerequisite to filing a post trial Rule 50(b)
motion.

at trial was insufficient to demonstrate municipal liability under
Monell. Motion at 7. PHS argues that Plaintiff "identified PHS's
policy as only permitting a nurse to send an inmate to the hospital
in a life-threatening situation; and, in a non-life threatening
situation of first calling a physician." Id. at 12. PHS claims,
however, that Plaintiff did not prove that PHS' "'deliberate
intent' in making this policy [was] to deny hospitalization of
inmates or purposely delay hospitalization." Id. Thus, PHS argues
that "Fields presented no evidence linking the [PHS] policy as the
cause of his injury." Id.

Plaintiff responds that the policy suggested by PHS was "not
one of the policies Fields suggested as having caused his
injuries." Response at 4. Instead, Fields advanced the theory
that "PHS had a policy of basing inmate emergency medical care
decisions on costs concerns rather than on necessity." Id.
Consequently, Fields maintains that he presented both sufficient
evidence of the cost-containment policy and its causation to
Fields' injury for the jury to have reasonably found PHS liable.
Id. at 4-7.

Deliberate indifference to an inmate's serious medical need is
unquestionably a constitutional violation. Estelle v. Gamble, 429
U.S. 97 (1976). A municipality may only be held liable where an
"official policy" causes a constitutional violation. Monell, 436
U.S. at 694. "The 'official policy' requirement was intended to

distinguish acts of the **municipality** from acts of **employees** of the municipality , and thereby make clear that municipality liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)(emphasis in original). "[T]he Monell policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates." Buckner v. Toro, 116 F. 3d 450, 453 (11th Cir. 1997). Thus, "[d]eliberate indifference to serious medical needs may be shown by proving a policy of deficiencies in staffing or procedures such that the inmate is effectively denied access to adequate medical care." Anderson v. City of Atlanta, 778 F.2d 678, 686 (11th Cir. 1985).

Here, the Court finds that Plaintiff presented sufficient evidence that PHS' policy/custom of trying to contain costs for emergency medical care was the moving force behind the violation of Plaintiff's constitutional rights. Plaintiff submitted evidence that, despite PHS' claimed "official" policy that inmates could be sent to the hospital if a nurse thought it constituted a life-or-death decision, PHS made it known to medical staff that only a physician could send an inmate to the hospital for emergency care. Nurse Allen testified that at least four members of PHS' management complained to staff about the excessive costs associated with unnecessarily sending inmates to the hospital. Additionally, PHS'

administrators told staff that only a physician should decide whether an inmate should be sent to the hospital for emergency care. In particular, Nurse Allen testified as follows:

> Q:  I mean, did anybody ever have a talk with you regarding when you should send an inmate to the hospital?
>
> A:  I know they yelled a lot about the nurses at the stockade because they were sending them to the hospital without calling a doctor.  And then the hospital was sending them back because there was nothing wrong with them.

TT at 215, lines 7-14.

> Q: Okay. What did this Shawn Irving say about - - going back to Shawn Irving, what did she say about - - you started to tell me. When should an inmate be sent to the hospital? "Do you want me to rephrase it? I can do that.
>
> A:  I don't know.  It's same thing.  She told us that, unless it was an emergency, that we could take the initiative.  If not, call a doctor, and let the doctor make the decision, because it cost PHS so much money every time we take somebody to the ER.
>
> Q:  That's what this Shawn Irving told you.
>
> A:  Well, yeah. Everybody knew that, because they got to tie up an officer, and they have to take an officer with them, and they're short of officer.
>
> Q:  But this Shawn Irving -- I mean, did she say that to you?  That it costs money every time we have to send an inmate to the hospital?
>
> A:  Yeah, she said that.  And all of them.  Everybody. That's Marty - - I don't know what her other name is. But she said the same thing.  She worked out the at the Core.
>
> Q:  Marty?
>
> A:  Marty.  But I don't know what her other name is.
>
> Q:  Was Marty a PHS employee?

A:  Yeah.  She was director of something out there.

Q:  What do you mean, out there?  Where?

A:  Out at the stockade.

Q:  Okay.

A:  And Kevin Flickinger.  He was something out there. And he said that in the meetings.  You know, about how much money it costs to send someone to the hospital.

Q:  What did he say?

A:  I don't remember exactly.  It's just that it costs a lot of money if it's not necessary, and we shouldn't take that on us because we're not skilled enough to do that. It should be a doctor that makes that decision.

Q:  All right.

A:  That we weren't trained to designed whether somebody needs to go to the ER or not.  That's a doctor's job to do.  Unless you can see that they're dying any minute.

Q:  So is it - - let me see if I understand you right. You're saying that this Ms. Irving, this Marty, and this Kevin Flickinger, all expressed statements at these meetings about that it costs a lot of money to send inmates to the hospital.

A:  Yes.  And the sheriff's department didn't like it because they had to tie up officers, and it was just - - unless it was necessary.  Now, if it was necessary, that's one thing.  But when the nurses out at the stockade are sending people to the ER because they're in labor, and they're not even pregnant, you know, they're tying up an officer.  They're doing all this stuff.  And that's what they were talking about. That's unnecessary foolishness.

Q:  Did anybody - - any of these three people, or anybody else, ever make statements about sending inmates to the hospital was costing PHS a lot of money?

A:  All of them.  Everybody knew that.

-11-

Q:  And when they would tell you that, they would say it's costing money, therefore?

A:  No.  They never said that.  They just said make sure, because you're not trained to do that unless it's a crisis.  And make sure that the doctor makes the decision to do it.  That way, there's not any unnecessary money spent for foolishness.  And I'm not trained. If I was, I'd make doctor's money.

Q:  Besides Kevin, Marty, and Shawn Irving, did anybody else make statements?

A:  There was another director there.  I can't remember who it was.

Q:  Was it a man or a woman?

A:  It was a man, but I can't remember who he was.

Q:  Director of what?

A:  He was there before Shawn.

Q:  Was he the director of nursing?

A:  Um-hum.  But I can't remember who he was.

Q:  Yes?

A:  I can't remember what his name was.

Q:  Was he the director of nursing immediately before Shawn Irving?

A:  I think so, yeah.

Q:  And what did he say in regards to costs?

A:  The same thing.  He just said we don't want to do this unnecessarily.  Make sure that someone that's got the experience and knows how to assess things assesses them to send them.

Q:  Do what unnecessarily?

A:  Send them to the hospital.

Q:  Inmates?

A:  Inmates, or staff, or -- you know.

TT at 220-23.  Nurse Allen explained that she decided to wait and have Fields examined when the jail's doctor arrived, instead of sending him to the hospital in the early hours of the morning.  Id.

Nurse Allen also recounted how PHS representatives would visit the facility during contract negotiations with the Sheriff to appraise staff of the likelihood of securing the contract.  Id. at 219.  Shawn Irving, PHS' corporate representative, acknowledged that the Sheriff ultimately was responsible for any monies expended on outside medical care in excess of the PHS contract, and agreed that the Sheriff would not be happy if the costs for outside care were high.  Id. at 342-344.  Further, Ms. Irving explained that PHS and the Sheriff's responsibility to provide and pay for an inmate's hospital care ends when an inmate is released early from the remainder of his sentence for "compassionate care" reasons.  Id. at 344-45.

Based upon the record evidence, the Court concludes that the jury reasonably could have concluded that PHS' expressed concern about containing costs resulted in the delay in sending Fields to the hospital.  Additionally, the jury could have reasonably concluded that PHS policy of having only a nurse, as opposed to a physician's assistant or doctor, on staff during the evening hours, compounded with PHS' expressed directive that nurses were not

-13-

"qualified" to unilaterally send an inmate to the hospital, absent a life-and-death situation, also resulted in the delay in sending Fields to the hospital or Fields being seen by a physician.

An Eighth Amendment violation is shown where an inmate is deprived of necessary medical care for budgetary or financial reasons. <u>Simmons v. Prison Health Servs., Inc.</u>, No. CV408-239, 2009 WL 2168685 *5 (S.D. Ga. July 20, 2009)(noting "[a] focus on profit at the expense of adequate medical care exposes a defendant to liability under § 1983."). PHS intent in instituting the restrictions on accessing outside medical care was explicit -- to contain costs. Further, a delay in the treatment of a serious medical condition, such as Plaintiff's condition, is recognized as a constitutional violation. <u>Harris v. Cowenta County</u>, 21 F.3d 388, 393 (11th Cir. 1994).

Based upon the foregoing, the Court denies PHS' Rule 50 Motion.

**B.   Rule 59 Motion**

Defendant raises three issues in the Rule 59 motion, none of which the Court finds persuasive.

**1.   Jury Failed to Follow
        Court's Instructions**

PHS contends that the "jury did not follow the instructions given by the Court." Motion at 15. PHS argues that "there was no evidence PHS' policy was created with deliberate indifference or that the policy had any casual effect." <u>Id.</u> at 17. Consequently,

PHS claims that "the fifth and sixth elements[2] of the instruction were unsupported." Id. PHS maintains that, because there was "no evidence at trial" of these elements, it is "an impossibility" that "the jury followed the instructions." Id.

Plaintiff, in response, submits that PHS' "argument essentially restates its purported Rule 50(b) argument." Response at 11. The Court agrees, and reincorporates herein its findings as set forth above.

## 2. Verdict Is Inconsistent

PHS next alleges that the jury's verdict is inconsistent because the jury concluded that neither P.A. Richards nor Nurse Allen had an awareness of Plaintiff's serious medical need. Motion at 17. Because "[a]s a corporation, PHS derives its awareness from employees," and neither Richards nor Allen were aware of Plaintiff's medical need, PHS argues that it could not have been found to have been deliberately indifferent. Id. PHS requests that, pursuant to Fed. R. Civ. P. 49(b), the Court enter judgment for PHS, or order a new trial. Id. at 18.

In response, Fields claims that PHS's Rule 49(b) objection to the verdict as inconsistent is waived because PHS failed to make any objection at trial, and, in fact, agreed to the verdict form.

---

[2]The fifth element was that the "Defendants Acts were the proximate or legal cause of the damages sustained by the Plaintiff," and the sixth element was "the deprivation of Plaintiff's constitutional right was the direct result of the corporation's custom, policy or practice." Doc. #122 at 8-9.

Response at 12.  Fields also insists that the Motion must be denied because PHS can not show that the challenged instruction was plain error under Fed. R. Civ. P. 51(d)(2).  In the alternative, Fields asserts that the jury's verdict is not inconsistent.

PHS, in reply, submits that it did not waive its objection under Rule 49(b) because an objection to inconsistency between special interrogatories and a general verdict form is not waived even if counsel fails to raise the objection before the jury is discharged.  Reply at 4.  PHS also claims that the issue of waiver is a "nonissue" because PHS is not arguing that there was an "inconsistency between the instructions and the verdict form."  Id. Rather, PHS contends that the issue is "whether the general verdict is consistent with the interrogatories."  Id.  PHS suggests that it is not, because "evidence of corporate awareness" cannot exist without evidence of an employee's awareness.  Id. at 5.

PHS purports not to challenge as inconsistent the instructions and the verdict form.  Reply at 4.  Despite PHS' insistence otherwise, PHS is objecting to the form of interrogatory questions 2 and 3 on the verdict form.  See Golub v. J.W. Gant & Assocs., 863 F.2d 1516, 1520-21 (11th Cir. 1989)(noting that despite defendant's "protestations to the contrary," defendant's argument that jury's verdict was insufficient to support award of punitive damages was a challenge to the form of one of the interrogatory questions).  As such, PHS' objection is untimely and has been waived.

-16-

Prior to the instant Motion, PHS raised no objection to the verdict form concerning questions 2 and 3.  Indeed, PHS agreed to the form and, in fact, suggested the changes to question 2 - - omitting the requirement that the jury find an awareness of Plaintiff's medical condition on behalf of  PHS.  The record is clear in this respect.

The Court convened a charge conference several times prior to finalizing the jury instructions and jury verdict form.  On the first draft of the jury verdict form, question 2 read as follows:

> 2. That Defendant was aware of the Plaintiff's serious medical need?
>
> As to Defendant Prison Health Services, Inc.:
>
> _____ Yes   or _____  No
>
> As to Defendant Joseph A. Richards
>
> _____ Yes   or _____  No
>
> As to Defendant Bettie Joyce Allen
>
> _____ Yes   or _____  No
>
> Note: Regarding! Question 2, if you answered "Yes" as to one or more defendants proceed to Question 3 only with respect to those defendants as to whom you answered "Yes."  If you answered "No" as to all defendants in Question 2, skip the remaining questions and have your foreperson sign this verdict form at the bottom of the last page.

Doc. #110 at 2.  During the first day of the charge conference, the following exchange took place:

THE COURT: Page 2?

**MR. TOOMEY: Well, Your Honor, on Page 2, I don't think it should be Prison Health Services.   Involving the awareness.**

THE COURT: Say that again, please?

**MR. TOOMEY: I don't think Prison Health Services should be included in Number 2.**

THE COURT: Oh, so just have the defendant was aware of the serious medical need, relating only to the individual defendants?

MR. TOOMEY: Yes, sir.

THE COURT: So that means you don't think the plaintiff has to prove that the corporation was aware of it?

MR. TOOMEY: I do think they have to prove that; but I don't think they -- the language shouldn't be this blank.

THE COURT: Tell me what you mean by that.

MR. TOOMEY: The awareness shouldn't be through just any employee. Otherwise, then we really are talking about vicarious.

THE COURT: Haven't we covered that in the jury instructions?

MR. TOOMEY: We did. I don't want to undo that here.

THE COURT: Okay.

MR. CASSATA: Your Honor, if I may, actually, I think Mr. Toomey is right, because, under Monel, policy --you have to show that the policy or custom was the moving force to cause the constitutional injury.  You really don't have to show knowledge.

MR. LAUER: Of the corporation.

MR. CASSATA: Right.  As to the corporation.

THE COURT: Well, that's a phrase we didn't use, but maybe we should, is moving force.  But that's a different issue.  So do both sides agree, then, that we should delete that first option in Number 2?

MR. CASSATA: Yes, Your Honor.

MR. LAUER: As of right now, Judge, I'd like to think about it tonight, when I have a little bit of a clear head; but, yes, I agree right now, I agree that Prison Health Services should be removed.

THE COURT: That's what you're suggesting, is just delete that option?

MR. TOOMEY: No. I'm suggesting it should be worded so that it doesn't lead the jury to the possibility of vicarious liability.  I still think there has to be awareness, but I don't think it can be awareness through, in this case, Nurse Rigby, or somebody that isn't named, because then we would be led down the road back to vicarious liability.  But I agree we should take a look at it.

THE COURT: Okay. I think that's probably a good idea to take a look at that tonight, then.  All right.  Anything else on Page 2? All right.

TT at 387-390 (emphasis added).  The next day, the Court again convened the charge conference and resumed discussing the wording of question 2.

THE COURT: All right.  On the verdict form, there was a couple of issues.  Page 1, I don't think there was any issue.  Page 2, my memory is there was a consensus, on Question 2, to delete the first defendant, Prison Health Services, option, and have just the other two defendants. Is that still the consensus?

MR. CASSATA: That is correct, Your Honor.  But if we do that, we have to correct the note at the bottom; and I think that that's what -- my suggestion is, if you get rid of the second sentence of the note, and just put, "Proceed to Question 3 with respect to Prison Health Services."

THE COURT: All right.  Mr. Toomey? I guess one step at a time. Do you agree that we need to delete the question as it relates to Prison Health Services?

MR. TOOMEY: Yes, sir.

THE COURT: Now, in terms of how to change the note, tell me again what it is you're suggesting.

MR. CASSATA: I'm suggesting removing the second sentence of the note that begins, "If you answer no." Just get rid of that whole sentence.

THE COURT: Right.

MR. CASSATA: And add," Proceed to Question 3 with respect to defendant Prison Health Services."

MR. TOOMEY: There would have to be something added there, not taken away, if this question only applies to --

THE COURT: The way we have it now, regardless of their answer, they need to proceed to Question 3. Right?

MR. CASSATA: Correct, Your Honor.

MR. TOOMEY: No. The way it is now, the second sentence says if you say no --

THE COURT: If you don't say anything with regard to Prison Health Services.

MR. TOOMEY: Right.

THE COURT: So if they say yes or no for either of the two individuals, they still need to go to Number 3. At least as to your other client, Prison Health Services.

MR. TOOMEY: Well, they would as to them; but if they say no to the two here, then they go not to Number 3, they go and sign this and go home. If there's no serious medical need, and the answer is no, they don't go to Question 3. They sign the verdict form and turn it in. Just like this says.

MR. CASSATA: Your Honor?

THE COURT: Yes.

MR. CASSATA: The bottom of the note, it says, "Regarding Question 2, if you answered yes as to one or more defendants," and then you have the two individuals, "Proceed to Question 3 only with respect to those

-20-

defendants as to whom you've answered yes."  So if the jurors say no as to those two defendants, then the instruction is proceed to Question 3 with respect to defendant Prison Health Services.  I think it . . . .

THE COURT: Well, if you deleted the second sentence . . . . How about we do it this way.  "Regarding Question 2, if you have answered yes as to one or more defendants, proceed to Question 3 only with respect to those defendants as to whom you answered yes. If you answered no as to both defendants in Question 2, skip the remaining questions as to the individual defendants, proceed to Question 3 with regard to Prison Health Services."

MR. CASSATA: Maybe just add, "Irregardless of your answer here, proceed to Question 3."

THE COURT: How about just "regardless".  I don't know what irregardless means.

MR. CASSATA: Fair enough, Your Honor.

**MR. TOOMEY: I'm okay with the way the Court's changed it.**

TT at 571-74 (emphasis added).  Consequently, the interrogatory regarding Defendant PHS was removed from question 2 on the final jury verdict form.  Question 3 remained the same, requiring the jury to determine as to each named defendant, whether the defendant was deliberately indifferent to Plaintiff's serious medical condition.  Doc. #113 at 3.

PHS cannot now claim as error the wording of the interrogatory which they suggested.  Additionally, it is well established law in this Circuit that in order to challenge a jury's verdict pursuant to Rule 49(b), a party must first request that the issue be resubmitted to the jury; otherwise, a waiver occurs of the alleged inconsistency.  Coralluzzo v. Educ. Mgmt. Corp., 86 F.3d 185, 186

(11th Cir. 1996)(collecting cases)(stating "[this Court has repeatedly held that all challenges to the inconsistency of special verdicts must be raised before the jury is excused."); Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1200 n. 4 (11th Cir. 2004)("As a general rule, a party must raise a Rule 49(b) challenge to the form of the verdict and the jury's answers at the time they are announced by the jury, and failure to do so constitutes waiver."); see also Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1329 (11th Cir. 1999) (citations omitted)(strictly interpreting Fed. R. Civ. P. 51 (c)(2) and holding "A party who fails to raise an objection to a verdict form interrogatory . . . prior to jury deliberations waives its right to raise the issue on appeal.").

Even if the Court finds that the jury's finding on question 2 and question 3 are not consistent, the Court is required to "make all reasonable efforts to reconcile [the inconsistency]." Wilbur v. Corr. Servs., 393 F.3d at 1200 (citations omitted); see also Griffin v. Matherne, 471 F.2d 911, 915 (5th Cir. 1973)(recognizing that "[t]he Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly.").[3]  Here it is likely that the jury determined that Mr. Fields' injuries were

---

[3]Unless later superceded by Eleventh Circuit precedent, a Fifth Circuit decision issued prior to the close of business on September 30, 1981, binds this court.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

caused by the delay in sending him to the hospital that resulted from PHS' attempt to contain costs, as evidenced by its repeated admonitions to staff that only a doctor  was qualified to make the decision whether to send an inmate to the hospital, thus making it difficult for inmates who experienced medical issues late in the evening to obtain necessary medical care.  "Lack of funds for facilities cannot justify an unconstitutional lack of competent medical care or treatment of inmates."  Anderson v. City of Atlanta, 778 F. 2d at 688, n.14 (citations omitted).  Further, binding precedent in this Circuit makes it clear that it is consistent for a jury to absolve the individual defendants of § 1983 liability, while simultaneously holding the corporate or municipal entity liable for the constitutional violation because of a policy or practice.  Id.  PHS' position that Plaintiff did not demonstrate PHS had "awareness" of Plaintiff's serious medical condition because the jury found that neither Richards nor Allen were aware that Plaintiff had a serious medical condition is unpersuasive.  "Proving such subjective awareness on the part of a governmental entity is not practical, and, therefore it is necessary to apply a more awkward objective analysis to the deliberate indifference factor."  Vinson v. Clarke County, Ala., 10 F. Supp. 2d 1282, 1300 (S.D. Ala. 1998)(opining that the inquiry is limited to whether the "substantial risks" associated with the

policy were "so obvious" that the entity "can reasonably be said to have been deliberately indifferent to the need.").

Furthermore, in closing, counsel for PHS stressed that PHS' liability was not, in any way, tied to the actions of its employees, but instead was predicated solely upon the finding of a custom or policy.

> As far as Prison Health Services go, there's a completely different claim. Prison Health Services, when you read the jury instructions, cannot be held liable for their employees. In a negligence case, they can. But again, this is not a negligence case. They cannot be held liable for their employees, whether those employees be Miss Allen, Mr. Richards, or anyone else working in the jail. In a case of this type, they cannot be liable for their employees. Instead, Prison Health Services is only liable for the customs and policies that they create, and only if those customs and policies caused a constitutional injury.

TT at 690-91. Additionally, the Court instructed the jury as to the degree of proof that was necessary to find PHS liable to Plaintiff. The relevant section of the jury instructions stated:

> In this case, the corporate defendant, Prison Health Services, Inc., can be held liable only if you find that the deprivation of the plaintiff's constitutional rights was the direct result of the corporation's execution of a policy or custom. The corporate entity is responsible only when an injury is inflicted through the execution of its policy, or custom, whether made by its policy makers or by those whose decision or acts may be fairly said to represent official policy or custom. It is not enough merely to show that a corporate employee caused the plaintiff's injury.
>
> A policy often refers to formal rules or understandings often, but not always, committed to writing that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time. A policy is a specific

decision, or set of decisions, designed to carry out such
a chosen course of action.

Custom means any permanent, widespread, well-settled
practice of the defendant corporation.  A corporation may
be held liable for constitutional deprivations visited
pursuant to a company's custom even though such a custom
has received formal approval through the
corporation's official decision-making channels.

A corporate entity may not be held liable for a policy or
custom unless that policy or custom demonstrates a
deliberate indifference to a substantial risk of serious
harm and there is a direct causal link between the policy
or custom and the injury suffered by plaintiff.

TT at 615-16.

Based upon the foregoing, the Court finds that PHS waived any
objection to the jury verdict as inconsistent.  In the alternative,
the Court finds the jury's verdicts were not inconsistent based
upon the evidence of record.  Consequently, the Court denies PHS'
motion  on this issue.

### 3.   Jury Not Sufficiently Instructed On Punitive Damages

PHS argues that the punitive damages award should be set aside
because the Court refused to instruct the jury on the definition of
the word "malice" as contained in the instruction to require evil
intent.   Motion at 18.   Thus, PHS objects to the form of jury
instruction on the punitive damages issue.  At trial, the counsel
for PHS made the following motion:

MR. TOOMEY: Last [jury instruction issue], Your Honor.
Page 15.

THE COURT: Page 15?

-25-

MR. TOOMEY: That's correct. Your Honor, this is where we're talking about the jury's being instructed on punitive damages?

THE COURT: Yes.

MR. TOOMEY: And the last paragraph, it says, "If you find for the plaintiff, and you further find that any defendant did act with malice," then we need to define malice.  And I think pretty much, from the case, it's evil intent.

THE COURT: Counsel?

MR. LAUER: My understanding is this is directly from the pattern instruction, Your Honor.

THE COURT: All right.  That is my belief, as well, . . . What do you propose as the instruction?

MR. TOOMEY: Well, since we already have the baseline for liability in this case being intentional conduct, I suggest that we use, "evil intent," as it is in libel cases.  It's going to have more than just intentional.

THE COURT: So give me an instruction.  Give me some law. Give me something.

MR. TOOMEY: <u>Sullivan versus New York Times</u>.  Sorry I don't have a copy of it, but in all the libel cases coming out of the U.S. Supreme Court, where there is a heightened, greater than intent sort of requirement, definition is evil intent.

THE COURT: You know, not helpful. If this was a libel case, I'd find it persuasive; but since it's not, I don't. All right. I do not see any definition of malice in the pattern instructions for anything related to what we're talking about here.  I'm going to have to take a recess to get the instructions retyped.  If, in that time, you can find a definition, I'll consider it.  But absent that, we'll go with what's in there.

THE COURT:  All right.  What's next?

MR. TOOMEY: That's it, Your Honor.

TT at 603-04.

Here, the jury concluded that in addition to compensatory damages, Fields was entitled to $500,000 in punitive damages. Doc. #113 at 8. The Court charged the jury on the issue of punitive damages consistent with the Eleventh Circuit's Pattern Jury Instructions (Civil Cases). The following instruction was provided to the jury on this issue:

> The Plaintiff also claims that the acts of each Defendant were done with malice or reckless indifference to the Plaintiff's federally protected rights so as to entitle the Plaintiff to an award of punitive damages in addition to compensatory damages. If you find for the Plaintiff, and if you further find that any Defendant did act with malice, or reckless indifference to the Plaintiff's federally protected rights, the law would allow you, in your discretion, to assess punitive damages against that Defendant as punishment and as a deterrent to others.
>
> When assessing punitive damages, you must be mindful that punitive damages are meant to punish the Defendant for the specific conduct that harmed the Plaintiff in the case and for only that conduct. For example, you cannot assess punitive damages for the Defendant being a distasteful individual or business. Punitive damages are meant to punish the Defendant for this conduct only and not for conduct that occurred at another time. Your only task is to punish the Defendant for the actions he, she or it took in this particular case.
>
> If you find that punitive damages should be assessed against a Defendant, you may consider the financial resources of the Defendant in fixing the amount of such damages and you may assess punitive damages against one or more of the Defendants, and not others, or against more than one Defendant in different amounts.

Final Jury Instructions (Doc. #122) at 15-16.

The Court is not required to track the Pattern Jury Instructions exactly, which exist "as a convenience to the bench and the bar." United States v. Veltmann, 6 F. 3d 1483, 1492 (11th

-27-

Cir. 1993).   Instead, "[a] trial judge has broad discretion in formulating jury instructions." Id.   However, the instructions must not "misstate the law or mislead the jury to the prejudice of the objecting party." Palmer v. Bd. Of Regents of the Univ. Sys. of Ga., 208 F.3d 969, 973 (11th Cir. 2000)(citations omitted).

Generally, "punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003).   However, in recognizing the availability of punitive damages in § 1983 cases, the Supreme Court expressly rejected the application of only an evil intent standard, adopting instead the same reckless standard applicable for ordinary torts.   Smith v. Wade, 461 U.S. 30, 49 (1983)(affirming the trial court's instruction on punitive damages that omitted requirement of showing "actual ill will or intent to injure" and, instead required only a showing of "being reckless or callously indifferent.").

The jury instruction for punitive damages given by the Court in the instant case was virtually identical to the wording of the Pattern Instruction.   The Court does not find that either the absence of the definition of "evil intent" from the punitive damages instruction, or the jury instructions read in totality,

misstate the law or mislead the jury.  Consequently, the Court denies PHS Motion on the issue of punitive damages.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   Defendant Prison Health Services, Inc.'s Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial (Doc. #125) is **DENIED.**

2.   **Plaintiff** shall file a supplement to his Motion for Attorney Fees and Costs **within ten (10) days,**[4] and **Defendant PHS** shall file a response to the motion and supplement **within twenty-one (21) days** thereafter.

**DONE AND ORDERED** at Fort Myers, Florida, on this __2nd__ day of September, 2011.

_John E. Steele_
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record

---

[4]Plaintiff has already provided the Court with a courtesy copy of its Motion for Attorney Fees and Costs (Doc. #116).  Thus the Court deems it more judicious to require Plaintiff to file a supplement to its prior motion, as opposed to amending its prior motion, to include the additional costs associated with responding to PHS' instant Motion.